IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GUYAN INTERNATIONAL, INC.
D/B/A PERMCO,

                Plaintiff,

v.                                      CIVIL ACTION NO. 3:10-1244

TRAVELERS CASUALTY AND
SURETY COMPANY and
PHOENIX INSURANCE COMPANY,

                Defendants.

Pending before the Court are one motion to dismiss and six separate motions for summary judgment. The Court reviewed the motions, responses, replies, and heard oral argument on the motions at the pretrial conference held on November 28, 2011 at 10:30AM.

For the reasons set forth below, Defendant Travelers Casualty and Surety Company's Motion to Dismiss (ECF No. 29) is **DENIED as moot**; Defendant Phoenix Insurance Company's Motion for Summary Judgment (ECF No. 36) is **GRANTED**; Plaintiff Guyan International, Inc.'s Motion for Summary Judgment Against Phoenix Insurance Company (ECF No. 72) is **DENIED**; Plaintiff Guyan International, Inc.'s Motion for Summary Judgment Against Travelers Under the Fiduciary Liability Coverage (ECF No. 74) is **DENIED**; Plaintiff Guyan International, Inc.'s Motion for Summary Judgment Against Travelers Under the Crime Coverage (ECF No. 76) is **DENIED**; Defendant Travelers Casualty and Surety Company's Motion for Summary Judgment Under the Crime Coverage (ECF No. 94) is **DENIED**; Defendant Travelers Casualty and Surety Company's Motion for Summary Judgment Under the Fiduciary Liability Coverage (ECF No. 96) is **GRANTED**.

## I. Background

Plaintiff Guyan International, Inc. d/b/a Permco ("Permco"), established an employee benefit plan funded in part by Permco and in part by employee payroll deductions. *First Am. Compl*, ¶ 6, ECF No. 27. In June of 2007, Permco contracted with Professional Benefits Administrators, Inc. ("PBA") to serve as benefits administrator under the plan. As benefits administrator, PBA was to maintain a segregated account for the plan contributions which would be used to pay claims for medical and prescription benefits. *Id*. at ¶ 10. In early 2010, Permco discovered that some claims had not been paid by PBA and that some medical providers had instituted collection efforts against its employees and/or refused additional care. *Id*. at ¶¶ 13-14. After repeated unsuccessful demands for information from PBA, Permco terminated their contract effective March 30, 2010. *Id*. at ¶ 17. Thereafter, Permco filed suit against PBA and others in the Northern District of Ohio seeking recovery of the funds misappropriated by PBA. *Id*. at ¶ 22. On January 7, 2011, the Court in Ohio entered an order granting partial summary judgment in favor of Permco and against PBA. *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 2011 WL 53105 (N.D. Ohio January 7, 2011). Specifically, the Ohio Court found that PBA breached its ERISA-established fiduciary duty and that PBA's breach resulted to damages to Permco in the amount of $501,380.75. *Id*. at *7.

In order to reduce its risk of loss arising from the establishment and ongoing administration of its employee benefit plan, Permco purchased WRAP+ Policy No. 104-LB-104925497 ("Travelers Policy") from Travelers for the policy period March 31, 2010 to March 31, 2011. *Mem. In Supp. of Pls.' Mot. for Summ. J. Under Crime Coverage* 2, ECF No. 77. Additionally, Permco purchased Commercial Insurance Policy No. Y-630-926K1477-PHX-09 ("Phoenix Policy") from Defendant Phoenix for the period July 1, 2009 to July 1, 2010. *Id*. After discovering that PBA was not paying

claims, Permco submitted claims under these policies. Both Phoenix and Travelers deny coverage, and Permco brought this suit seeking a declaration of coverage and determination of damages.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. Discussion

### A. Estoppel and Waiver

Permco claims that the doctrines of estoppel and waiver bar both defendants from raising grounds for denying coverage not asserted in their initial denial letters. In *Potesta v. U.S. Fidelity*,

504 S.E.2d 135, Syl. Pt. 4 (W. Va. 1998) the West Virginia Supreme Court of Appeals explained that an insurer who has previously stated reasons for denying coverage may be estopped from asserting previously unarticulated grounds for denying coverage when the insured can prove that it was induced to act or refrain from acting to its detriment because of reasonable reliance on the previously stated grounds for declination. The difference between estoppel and waiver, the West Virginia Court explained, is that waiver contains "no requirement that an insured have detrimentally relied upon an insurer's previously stated reason(s) for denying coverage. . . . Rather, the insured must show, by clear and convincing evidence where waiver is implied, that the insurer intentionally and knowingly waived the previously unarticulated reason(s) for denying coverage." *Id*. at Syl. Pt. 3.

Permco has not met the burden of establishing estoppel or waiver against either defendant. With regard to estoppel, Permco has not shown that it relied on the defendants' initial denials to its detriment, or that its course of action would have been any different if the defendants had included the additional grounds for denial in their initial denial letters. Indeed, it is hard to imagine that Permco would not have taken measures to compensate its employees for their losses, an obligation that Permco recognizes to be imposed by ERISA. As to waiver, Permco has not shown evidence that either defendant knowingly and intentionally waived the exclusions relied upon in their motions for summary judgment. To the contrary, in their initial denial letters, both Travelers and Phoenix expressly reserved rights to supplement their initial declinations. *See Phoenix Denial Letter*, ECF No. 77-13; *Travelers Denial Letter*, ECF No. 77-17.

**B. Travelers Policy**

    **1. Fiduciary Liability Coverage**

Permco and Travelers have filed cross motions for summary judgment on the issue of coverage under the fiduciary liability protection provided by the Travelers Policy. Travelers also filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) based on a "no action" clause contained in the fiduciary liability coverage. Since then, the parties consented to resolution of this case based on the motions for summary judgment. While Travelers never expressly abandoned its motion to dismiss, the Court resolves the question of fiduciary liability coverage without addressing the "no action" clause. Because this issue is resolved in Travelers' favor, Travelers' Motion to Dismiss (ECF No. 29) is **DENIED as moot**. The Court's resolution of this issue requires interpretation of the following provisions of the fiduciary liability coverage:

> I.B.
> Company shall pay on behalf of the Insured Loss for any Claims first made during the Policy Period . . . for a Wrongful Act. . . .
>
> II.M
> "Loss" means Defense Expenses and money which an Insured is legally obligated to pay because of a claim. . . . Loss shall not include . . .
>
> 2. payment of medical, pension, severance, Employee Stock Ownership Plan benefits or Employee Benefits which are or may become due, except to the extent that such sums are payable as a personal obligation of an Insured Person, because of such Insured Person's Wrongful Acts. . . .

*Travelers Policy, Fiduciary Liability Coverage*, ECF No. 77-1. Travelers argues that Permco's claim is excluded from this definition of "loss." Specifically, Travelers contends that Permco's claims are for "benefits due" and, as such, are specifically excluded from the definition of a covered "Loss." Permco cannot recover under the Fiduciary Liability coverage if the damages that it claims are "Employee Benefits."

Permco characterizes its loss as the ERISA-imposed obligation to fund the Plan a second time. This argument is circular. Permco's obligation to fund the plan exists only because of the plan's obligation to fund employee benefits. The Court **FINDS** that Permco's claim is for benefits due.

Permco argues that the exception to the exclusion applies because its officers are Insured Persons and are personally liable for the loss due to their own negligence. "Insured Person," is defined as "any natural person . . . " which is why this argument focuses on the hypothetical liability of Permco's officers. In support, Permco points to Travelers' marketing materials which state, "as fiduciaries [insureds would be] held personally liable to the plan participants and beneficiaries." *Bond & Financial Products Fiduciary Liability Marketing Brochure* 1, ECF No. 75-2. This argument based on marketing materials overlooks the fact that the Fiduciary Coverage is a claims made coverage and that no claims have been made against any of Permco's officers. For these reasons, Permco's Motion for Summary Judgment under the Fiduciary Liability Coverage is **DENIED** and Travelers' Motion for Summary Judgment under the Fiduciary Liability Coverage is **GRANTED**.

**2. Crime Coverage**

Both Permco and Travelers have moved for summary judgment under the Crime Coverage provisions of the Travelers Policy. Travelers denies coverage on two separate grounds. Alternatively, Travelers asserts that there is a genuine issue of material fact which precludes summary judgment for either party. First, Travelers alleges that "Plaintiff first discovered the loss at the latest in February of 2010, *before* the Policy's March 31, 2010 inception." *Mem. of Law in Supp. of Travelers Casualty and Surety Co. of America's Mot. for Summ. J. and in Opp'n to Pls.'*

*Mot. for Summ. J.* 11, ECF No. 95. Second, Travelers asserts that Permco's claim is not covered because PBA is not a "Fiduciary" as defined by the policy. The Court will address each argument in turn.

In support of the argument that Permco discovered the loss before the inception of the policy, Travelers relies on following interrogatory and response:

Q: When did You first learn You had incurred a Loss under the Policy.

> ANSWER: [Permco] states that in February of 2010, it discovered that some medical claims . . . had not been paid. . . . In the ensuing weeks, [Permco] learned of additional medical claims that were not paid. [Permco] made repeated unsuccessful demands . . . for information as to the status of payment . . . and on March 26, 2010, [Permco] informed PBA that it was terminating its agreement with PBA effective March 30, 2010.

Permco argues that this interrogatory, along with the other evidence gathered during discovery, reveals that Permco was aware of non-payment of medical bills prior to the coverage period but had no knowledge that the non-payment was the result of theft. Permco's position is supported by the deposition testimony of Permco President Rick Olszewski that he became aware of the unpaid medical bills between November 2009 and January 2010 and only through hindsight and retrospect recognizes that the nonpayment was attributable to theft. *Olszewski Dep. Tr.* 112-16, ECF No. 95-2.

In light of the parties' competing views of the evidence, the Court **FINDS** that there is a factual dispute as to when Permco became aware of sufficient facts to cause it to assume that loss covered by the Crime policy had been or would be incurred. The discovery date is certainly material as the policy only covers losses discovered during the policy period. In light of this finding, Plaintiff's Motion for Summary Judgment Under the Crime Coverage is **DENIED**.

Travelers' second argument, that PBA is excluded from the definition of a "Fiduciary" as defined by the policy, depends upon interpretation of the following policy provisions:

> I. A. 2.   ERISA Fidelity
>
> We will pay you for direct loss of, or direct loss from damage to, **Money, Securities,** and **Other Property** that belongs to an **Employee Benefit Plan**, directly caused by **Theft** or **Forgery** committed by a **Fiduciary**, whether identified or not, acting alone or in collusion with other persons.
>
>  . . . .
>
> III. W.
>
> "**Fiduciary**" means any natural person who is a trustee, an officer, an **Employee** or an administrator of any **Employee Benefit Plan**; and any person, or a member of the board of directors, an officer, an **Officer-Shareholder**, a member of the board of trustees, an **LLC Manager**, or an **Employee** while that person is handling **Money, Securities**, and **Other Property** that belongs to any **Employee Benefit Plan**.
>
> **Fiduciary** does not mean any agent, broker, independent contractor, broker/dealer, registered representative, investment advisor, custodian or other person or entity of the same general character.

*Travelers Policy, Crime Terms and Conditions*, ECF No. 77-1 (emphasis in original). In order to be covered by the ERISA Fidelity clause, any theft must be committed by a fiduciary. There is no dispute that both Permco and the plan are named as insureds under this policy, which leaves the Court to determine whether the definition of a fiduciary excludes Permco's claims under the Crime Coverage.

Travelers argues that PBA does not fall within the first clause of the definition because it is not a natural person and that PBA is excluded from the second clause because it is an independent contractor. Permco responds that "Employee or Administrator" expressly contemplates administration by a non-employee third party such as PBA. Travelers adds that the definition

represents a clear intent to define fiduciary more narrowly than ERISA and to restrict coverage to exclude entities (like PBA) who would be required by ERISA to maintain their own insurance.

In West Virginia, an insurance policy should be interpreted according to the plain, ordinary meaning of the language used. Syl. Pt. 2, *Glen Falls Insur. Co. V. Smith*, 617 S.E.2d 760 (W. Va. 2005). "Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." *Id.* at Syl. Pt. 3. An ambiguous provision in an insurance policy is then "construed strictly against the insurer and liberally in favor of the insured." *Id.* at Syl. Pt. 4; *see, e.g.,* Syl. Pt. 6, *Hambric v. Doe,* 499 S.E.2d 619 (W. Va. 1997); *Marson Coal Co. v. Insur. Co. of State of Penn.*, 210 S.E.2d 747 (W. Va. 1974). This is because "[w]ith respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl. Pt. 9, *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1 (W. Va. 1998). Of particular relevance to this case, "where the policy language is exclusionary, it will be strictly construed against the insurer . . ." *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guaranty Co.*, 504 S.E.2d 135 (W. Va. 1998).

Under Travelers' view, the independent contractor exclusion would eviscerate the "Employee or Administrator" language which at least implicitly covers third party administrators including independent contractors. In this regard, the definition is ambiguous. As for to Travelers' second argument, the Court does not find a clear intent to track ERISA liability. To the contrary,

the Court finds the independent contractor exclusion to be at odds with the inclusive language in the first clause of the definition. Because the definition of "fiduciary" is ambiguous, the Court construes this exclusionary language in favor of coverage. Accordingly, Travelers' Motion for Summary Judgment Under the Crime Coverage is **DENIED**.

## C. Phoenix Policy

Phoenix and Permco have both moved for summary judgment on coverage under the Phoenix Policy. Phoenix has advanced a number of arguments in support of its denial of coverage. Phoenix raised three independent grounds supporting their denial of coverage. As explained in more detail below, the Court concludes that Permco's claims do not arise from any negligent act, error, or omission as required by the Phoenix Policy and that the ERISA Exclusion precludes coverage of Permco's claims.

### 1. Permco's Damages Do Not Arise From A Negligent Act, Error, or Omission

The Phoenix Policy covers "those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error, or omission of the insured, or of any other person for whose acts the insured is legally liable. The negligent act, error, or omission must be committed in the administration of [Permco's] employee benefit program." *Phoenix Policy* ¶ 1.a, ECF No. 77-2. Phoenix argues and the Court agrees that PBA's actions cannot be construed as negligent. While PBA's initial commingling and failure to segregate plan funds may have been negligent, commingling of funds does not result in a funding shortfall unless the commingled funds are used for unauthorized purchases. With regard to these use of funds, there can be little doubt at this point that PBA's activity was anything but negligent. *See Olszewski Dep.*, 103-08, ECF No. 93-1 (Describing lies and intentional misappropriation of funds by PBA employees). With the exception

of Permco's allegation about commingling, which could not have led to a shortfall, the remainder of Permco's allegations claim wrongful and criminal conversion. *First Am. Compl.* ¶¶ 17-21, ECF No. 27. While there are a number of intermediate mental states (e.g. recklessly, wilfully, knowingly, intentionally), it is the determination of negligence upon which coverage depends. *See Group Voyagers, Inc. v. Employers Ins. of Wausau*, 66 Fed. Appx. 740 (9th Cir. 2003).

Permco raises its own potential negligence in selecting and failing to monitor PBA and the cause of its damages. In West Virginia, "no coverage exists for a loss if the covered risk was only a remote cause of the loss, or conversely, if the excluded risk was the efficient proximate cause of the loss." *Murray v. State Farm Fire and Casualty Co.*, 509 S.E.2d 1, Syl. Pt. 8. (W. Va. 1998).[1]

With regard to efficient proximate cause, the West Virginia Supreme Court of Appeals explained:

> The efficient proximate cause is the risk that sets others in motion. It is not necessarily the last act in a chain of events, nor is it the triggering cause. The efficient proximate cause doctrine looks to the quality of the links in the chain of causation. The efficient proximate cause is the predominating cause of the loss.

*Id*. at Syl. Pt. 8. Any negligence by Permco is not the efficient proximate cause of Permco's damages. As explained above, while the initial failure to segregate funds may have been careless or negligent, no funding shortfall would have come about without the unauthorized expenditure of plan funds. While such expenditures can in some cases be negligent, there is no

---

[1] Travelers has argued that West Virginia would apply Ohio law to this dispute. While Phoenix and Permco have not addressed the choice of law issue, the result in either state would be the same. *See Holmes v. Emp'rs Liab. Assur. Corp., Ltd.*, 43 N.E.2d 746, 753 (Ohio Ct. App.1941) ("In determining the cause of a loss for the purpose of fixing insurance liabilities, when concurring causes of damage appear, the proximate cause to which the loss is to be attributed is first the dominant-the efficient-one that sets the other causes in operation; and causes which are incidental are not proximate, although they may be nearer in time and place to the loss.")

question that PBA's misconduct, the efficient proximate cause of Permco's loss, was anything but negligent.

### 2. The ERISA Exclusion Precludes Coverage of Permco's Loss

As an independent basis for its denial of coverage, Phoenix argues and the Court agrees that Permco's claims for unpaid medical benefits fall under ERISA exclusion, which reads as follows:

> 2. Exclusions
> This insurance does not apply to: . . .
> g. Loss for which the insured is liable because of liability imposed on a fiduciary by [ERISA], as now or hereafter amended;

*Phoenix Policy*, ¶ 2.g, ECF No. 77-2. Permco cites *Lifeline Health Group, Inc. v. Nat'l Union Fire Ins. Co.*, 665 F. Supp.2d 770 (W.D. Ky. 2009) for the proposition that the exclusion does not apply because their liability arises from Permco's own negligence, not from PBA's judicially determined ERISA liability. *Lifeline Health Group*, the very case relied upon by the plaintiffs, interpreted a similar ERISA Exclusion and dismissed claims by employees for "medical bills not paid by the Plaintiffs due to failure of the healthcare plan." *Id*. at 777. On January 21, 2011, in identical terms and on Permco letterhead, a large number of Permco employees demanded "relief from the plan and/or Permco regarding . . . unpaid, approved claims under the plan." *Employee Demand Letters*, ECF No. 51-8. These employee demands do not allege negligence by Permco and are substantially identical to the claims dismissed in *Lifeline Health Group*.[2] The employee

---

[2]A small number of the employee communications in Sealed ECF No. 54 make passing reference to harm other than unpaid benefits such as credit card interest and negative credit reports. Without the benefit of briefing, the Court is hesitant to rule on the application of the policy to these potentially compensable injuries. The Court notes that these informal messages
(continued...)

demand letters do not allege negligence on the part of Permco, nor would it make a difference if they did, as the only relief sought is payment of medical benefits and Judge Dowd in Ohio has already determined this to loss to be imposed upon PBA as a fiduciary under ERISA. *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs*, 2011 WL 53105 at \*7 (N.D. Ohio January 7, 2011).

Phoenix argues, and the Court agrees, that Permco's claims fall under the ERISA exclusion. The case relied on by the plaintiffs applied a similar exclusion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), claims substantially identical to those of Permco's employees. *Lifeline Health Group*, 665 F. Supp. at 777-79. If Permco is liable for the unpaid benefits, a judicial determination of which is unnecessary because Permco has voluntarily undertaken to make payments, such liability exists "because of liability imposed on a fiduciary by [ERISA]." *Phoenix Policy*, ¶ 2.g, ECF No. 77-2. The Court will not entertain Permco's hypothetical claims of negligence when the ERISA Exclusion represents a clear and unambiguous intent to exclude from coverage claims arising from ERISA-imposed fiduciary liability. Accordingly, Plaintiff's Motion for Summary Judgment against Phoenix is **DENIED**; Defendant Phoenix's Motion for Summary Judgment is **GRANTED**.

## IV. Conclusion

For these reasons, Defendant Travelers Casualty and Surety Company's Motion to Dismiss (ECF No. 29) is **DENIED as moot**; Defendant Phoenix Insurance Company's Motion

---

[2](...continued)
do not allege negligence by Permco, do not request compensation from Permco, do not seek to hold Permco liable, and were apparently first disclosed in December of 2010, outside of the policy period and after litigation had already begun. If these e-mails constitute claims, a prospect the Court finds doubtful, it is possible that they would not fall under the ERISA Exclusion, though they would still be excluded because they do not arise from any negligence.

for Summary Judgment (ECF No. 36) is **GRANTED**; Plaintiff Guyan International, Inc.'s Motion for Summary Judgment Against Phoenix Insurance Company (ECF No. 72) is **DENIED**; Plaintiff Guyan International, Inc.'s Motion for Summary Judgment Against Travelers Under the Fiduciary Liability Coverage (ECF No. 74) is **DENIED**; Plaintiff Guyan International, Inc.'s Motion for Summary Judgment Against Travelers Under the Crime Coverage (ECF No. 76) is **DENIED**; Defendant Travelers Casualty and Surety Company's Motion for Summary Judgment Under the Crime Coverage (ECF 94) is **DENIED**; Defendant Travelers Casualty and Surety Company's Motion for Summary Judgment Under the Fiduciary Liability Coverage (ECF No. 96) is **GRANTED**.

It appears to the Court that the only remaining factual issues are the amount of damages and the date of discovery of the loss for purposes of the Crime Coverage. The parties are hereby **ORDERED** to meet and confer and to submit to the Court, no later than January 6, 2012, a schedule and proposed date for a trial of these issues. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 12, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE